# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SHIRLEY WILKINS,

    Plaintiff,

v.                                                           **CASE NO**: 8:09-cv-1009-T-26TGW

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC.,

    Defendant.
    _____/

## O R D E R

Before the Court is Defendant's Motion for Summary Judgment or, in the alternative, Motion for Final Judgment (Dkt. 18), and the Plaintiff's Memorandum in Opposition and Statement of Disputed Facts. (Dkts. 24 & 25). After careful consideration of the applicable law, the administrative record, and the entire file, the Court concludes that the motion should be granted.

## PERTINENT FACTS

This case seeks redress for the improper denial of long term disability benefits (LTD) under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, as amended. Plaintiff Shirley Wilkins worked for SunTrust Banks (SunTrust) as a "Financial Services Representative 2." The responsibilities of her job included assisting customers with loans and accounts. For purposes of this claim, Plaintiff's last day of work was July 6, 2008, and the elimination period ran from July 7, 2008, through January

2, 2009. (Dkt. 18, AR 439). On September 3, 2008, Plaintiff filed a claim for LTD benefits complaining of migraine and back pain which caused her to pass out at work and suffer confusion and weakness. Plaintiff provided a diagnosis in her application from her treating psychiatrist, Michelle Scargle, M.D., of conversion disorder with seizures (pseudoseizures), adjustment disorder, anxiety, and depression. Dr. Scargle opined that Plaintiff was not restricted in (1) lifting or carrying, (2) using hands or feet in repetitive actions, (3) reaching above shoulder level, or (4) bending, squatting or crawling. Dr. Scargle recommended that Plaintiff see a psychotherapist specializing in hypnotherapy.

A second treating physician, Dr. Robert Wyko, a doctor of osteopathy, submitted a report showing that Plaintiff's condition was psychological. Cardiac testing completed at the time of past fainting spells, which occurred as early as 1982, and continued in 2004, 2005, and 2006, was negative. Dr. Wyko saw Plaintiff in January, February and June 2008, and recommended that she see a psychiatrist.

Dr. Scargle evaluated Plaintiff in June 2008 and August 2008. Her medical records revealed that she had suffered unexplained syncopal episodes from childhood and that the attacks had become more frequent in the first half of 2008. Plaintiff reported that her spells had decreased in frequency by August 2008. In October 2008, Dr. Scargle reported that Plaintiff suffered from pseudoseizures possibly caused by depression. She noted that Plaintiff's episodes at work often required emergency medical service. Dr. Scargle opined that Plaintiff could work up until the time of pseudoseizure, even though Plaintiff did not receive any advance notice of such a seizure. Although Dr. Scargle

noted that Plaintiff felt unsafe to drive, her job did not require driving and she could do most clerical work until she suffered a pseudoseizure.

A third treating physician, Dr. Cabello, a neurologist, opined that Plaintiff suffered from "psychogenic spells." Dr. Cabello treated Plaintiff between December 2007 and August 2008. He noted that her muscle strength was normal. On August 14, 2008, Dr. Cabello evaluated Plaintiff and recommended that Plaintiff increase her activity level. None of the medical records from any of Plaintiff's three treating physicians indicated that she required any physical restrictions at work.

The claims administrator, Defendant Sedgwick Claims Management Services, Inc. (Sedgwick), sought a medical review of Plaintiff's conditions. Psychiatrist Reginald A. Givens reviewed the medical records and reported that Plaintiff, based on Dr. Scargle's findings, could perform her work except during the episodes. Dr. Givens found insufficient evidence that she was limited in the performance of her own occupation.

On November 5, 2008, Sedgwick sent Plaintiff a letter denying her claim for LTD benefits under the "own occupation" provision of her contract. The reason for denial was insufficient objective evidence to show that she was significantly impaired in the daily activities of living resulting from a psychiatric disorder or that she was restricted in her duties at work, except during the syncopal-like episodes. As such, Plaintiff was not disabled from performing the material duties of her job.

Plaintiff appealed the denial of LTD benefits. Along with the appeal, Plaintiff submitted a December 4, 2008, consultation by Dr. Robert Levin, a rheumatologist,

indicating she suffered from fibromyalgia, and Fibromyalgia Residual Functional Capacity Questionnaires from both Dr. Levin and Dr. Wyko. The questionnaire completed by Dr. Levin indicated that Plaintiff was incapable of working due to physical and psychological issues which limited her ability to sit and stand, specifically that Plaintiff could walk four blocks without rest but she could not lift objects. Dr. Wyko indicated on the questionnaire, in agreement with Dr. Levin, that Plaintiff was incapable of working, but she could walk three, not four, blocks without rest, and could occasionally lift up to ten pounds.

Sedgwick conducted two medical reviews: one by Dr. Marcus J. Goldman, who is board-certified by the American Board of Psychiatry and Neurology, and the second by Dr. Elena Antonelli, who is board-certified in Occupational Medicine and Emergency Medicine. Dr. Goldman conducted a telephonic interview with Dr. Scargle on March 3, 2009. Dr. Goldman concluded that Plaintiff's periodic spells would not preclude her from performing the duties of her job. He also concluded that Plaintiff was not restricted on her job throughout the 180-day elimination period. Moreover, her job did not require her to drive or work at unprotected heights. He opined that there was no objective evidence from the records that Plaintiff suffered a disability from a psychiatric perspective. Dr. Antonelli concluded that Plaintiff's subjective complaints were not supported by objective clinical findings. She observed that there were no descriptions of any dysfunction of the spine or extremities and found no objective evidence that she

would not be able to walk, sit or stand. She opined that the syncopol episodes would not limit her ability to work because she did not drive or work at protected heights.

Plaintiff's appeal was denied on March 13, 2009, for the reason that from a psychiatric or occupational medicine point of view, there is no clinical documentation showing that the Plaintiff suffered total and continuous disability throughout the 180-day elimination period. The letter sets forth in detail what documents were reviewed, which included documentation from Drs. Cabello, Wyko, Scargle, Hazlitt, Goldberg, Levin, Klein, and Ross. The following diagnoses were made: fibromyalgia, sleep apnea, obesity, gastroesophageal reflux disease (GERD), migraines, occipital neuralgia, conversion disorder with pseudoseizures, adjustment disorder, anxiety, and depression. (Dkt. 18, AR 440). The teleconference between independent physician advisor Dr. Goldman revealed that the Plaintiff was not disabled from her regular unrestricted job as of July 8, 2008, to present. Dr. Goldman noted that no clinical documentation from Dr. Scargle supported any condition of disability or functional impairment which would preclude the Plaintiff from performing her job as a Financial Service Representative 2. Dr. Goldman also noted there was no psychiatric pathology evidencing psychiatric impairment, no findings of loss of global functionality, and no findings of an altered mental state. There was no documentation or opinion that the periodic pseudoseizures would preclude the Plaintiff from performing her job on a continuous basis. (Dkt. 18, AR 440-441).

The letter of denial further summarized the findings of the second independent physician, Dr. Antonelli. Dr. Antonelli attempted unsuccessfully to conduct

teleconferences with Drs. Wyko, Johnson, and Cabello.  Dr. Antonelli reviewed the documentation and noted that the Plaintiff was not disabled from performing her job from July 7, 2008, forward that falls within the elimination period.  Dr. Antonelli also noted that most of the Plaintiff's complaints were subjective with no clinical findings to support a finding of disability.  Dr. Antonelli confirmed that there were no clinical findings supporting any disability or physical impairment preventing the Plaintiff from sitting, standing, or walking so that she could perform her job.  Finally, the letter of denial acknowledges that although "some findings were referenced," there were none that were so severe as to hinder her ability to perform her job.

## PROPER DEFENDANT

The proper party defendant in a suit to recover benefits due under the terms of an ERISA plan is the entity that holds itself out as the plan administrator.  See Rosen v. TRW, Inc., 979 F.2d 191, 193-94 (11th Cir. 1992);  29 U.S.C. § 1132(a)(1)(B).  Defendant Sedgwick argues that it is the claims administrator as opposed to the plan administrator under the plain terms of the policy and therefore it is not the proper party.  Sedgwick relies on Hamilton v. Allen-Bradley Co., 244 F.3d 819, 824 (11th Cir. 2001), in which the Eleventh Circuit cited Rosen as the authority that proof of the identity of the plan administrator may come not only from the plan document, but also from the factual circumstances surrounding the administration of the plan.  In Hamilton, the evidence revealed that Allen, the employer, had sufficient control over and had taken an active role in the claim process so as to qualify as a plan administrator.  Allen required its employees

to obtain claim applications from its human resources department, and it required its human resources department to answer employees' questions regarding the plan and to distribute a benefits booklet to employees. These actions made Allen a plan administrator along with UNUM, even though the plan language clearly made UNUM the sole administrator.

The Plan in this case provides that SunTrust will designate the administrator which will decide entitlement to benefits. (Dkt. 18, Exh. 1, PLAN 31, Section 8.1). The Plan sets forth that SunTrust is the "named fiduciary" responsible for the administration of the Plan "except to the extent that another person is designated as a named fiduciary." (Dkt. 18, Exh. 1, PLAN 28-29, Section 10.1). As to other fiduciaries designated by SunTrust, the Plan gives full responsibility and complete discretionary authority to control those aspects of administration delegated. (Dkt. 1, Exh. 1, PLAN 29, Section 10.3).

In the Summary Plan Description (SPD), the claims administrator for LTD benefits is designated as Sedgwick. (Dkt. 18, Exh. 2, SPD 46). Sedgwick, in its answer, declares that it was "not the Plan Administrator as to any ERISA covered plan and [was] merely the Claims Administrator for long term disability claims under the SunTrust Banks, Inc. Employee Benefit Plan offered by SunTrust Banks, Inc. [and that] the proper defendant for Plaintiff's claims is the SunTrust Banks, Inc. Employee Benefit Plan." (Dkt. 6, para. 1). The SPD provides that Sedgwick as the claims administrator will make the determination regarding entitlement to LTD benefits. (Dkt. 18, Exh. 2, SPD 47).[1] Based

---

[1] The Court notes, however, that Plaintiff's reference to "SPD 212" is not a part of the administrative record.

on the terms of the SPD, Plaintiff has established that according to its terms, Sedgwick had discretionary authority to determine entitlement to LTD benefits.[2] Moreover, the record shows that it was Sedwick that requested any additional records from Plaintiff, and Sedgwick, not SunTrust, that denied the claim. Thus, for purposes of this motion, the Court finds that Sedgwick is the proper party Defendant.

## STANDARD OF REVIEW

The Eleventh Circuit has afforded a framework within which to review the denial of benefits stemming from an ERISA welfare benefits plan. See Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1137-38 (11th Cir. 2004), overruled on other grounds by Doyle v. Liberty Life Assur. Co. of Boston, 511 F.3d 1352 (11th Cir. 2008). Under the first step in this framework,[3] this Court must determine whether the administrator's benefits-denial decision is "'wrong' (i.e., the court disagrees with the administrator's decision." Williams, 373 F.3d at 1138. Because the Court concludes that the decision was not "*de novo* wrong" as that term is defined by case law of the Eleventh Circuit, the analysis begins and ends there.

## THE MERITS

---

[2] The grant of authority to Sedgwick makes the deferential standard of review arbitrary and capricious, as opposed to *de novo,* applicable in this case. Doyle v. Liberty Life Assur. Co. of Boston, 542 F.3d 1352, 1359-60 (11th Cir. 2008) (clarifying that the only two standards under which an administrator's decision can be reviewed are arbitrary and capricious and *de novo*).

[3] The "Williams methodology remains intact except for the sixth step." Capone v. Aetna Life Ins. Co., 592 F.3d 1189 (11th Cir. 2010) (discussing Metropolitan Life Ins. Co. v. Glenn, ___ U.S. ___, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008))

Under the Plan, total disability means that the claimant must be "unable to perform each of the material duties of the occupation that [he or she] regularly perform[s] for SunTrust." (Dkt. 18, PLAN 85; SPD 40). The Plan and the SPD require the employee to submit objective medical evidence of the condition and "the restrictions and/or limitations precluding . . . working in your own occupation on a full-time basis." (Dkt. 18, PLAN 85; SPD 40). A total disability may be caused by a mental or nervous condition which is defined as "physical, mental, emotional, behavioral, or stress-related disorders caused or contributed to, directly or indirectly, by a mental or nervous condition, as classified in the Diagnostic and Statistical Manual of the American Psychiatric Association (DSM)." (Dkt. 18, PLAN 85; SPD 41).

First, the Plaintiff claims that she was declared disabled by one of her treating physicians during the period of the initial claims review. It is true that Dr. Cabello, her neurologist, opined at one time, on February 7, 2008, that she was "disabled from her condition, unable to work" due to tension headaches and atypical migraines. (Dkt. 18, AR 233). In that same letter of February 7th, Dr. Cabello noted that she suffered from episodes, but that it was difficult to make a proper diagnosis. (Dkt. 18, AR 232-33). Interestingly, Plaintiff did not stop working until July 7, 2008, when her psychiatrist, Dr. Scargle, recommended that she stop work for a time. On August 14, 2008, Dr. Cabello stated that her problem was "episodes suspicious for psychogenic spells," and that she was doing much better after the evaluation with her psychiatrist. (Dkt. 18, AR 107). Plaintiff takes the position that Sedgwick overlooked the fact that Dr. Cabello never

-9-

released the Plaintiff to return to work; however, there is no indication that Dr. Cabello ever told the Plaintiff to stop working or made any findings with respect to any restrictions or limitations the Plaintiff suffered. Hence, to the extent Plaintiff seeks to rely solely on the conclusory, unsubstantiated, comment in Dr. Cabello's February 7th letter to establish her disability, such reliance is insufficient to make Sedgwick's denial "*de novo* wrong," particularly given the fact that at the time no other treating physician had declared her disabled.

Next, the Plaintiff takes issue with the report of Dr. Givens, a psychiatrist chosen by Sedgwick, who gave an opinion for the initial, pre-appeal denial of benefits. (Dkt. 18, AR 154). Plaintiff contends that Dr. Givens' report should be totally disregarded because he did not examine the Plaintiff, and an evaluation is necessary in psychiatric evaluations. Dr. Givens relied only on his independent review of the records. See Sheehan v. Metropolitan Life Ins. Co., 368 F.Supp.2d 228, 254-55 (S.D. N.Y. 2005) (discounting Dr. Givens' assessment of no disability based on superficial disagreement with treating psychiatrist's report). It is established, however, that in determining whether the plan administrator's decision is supported by a reasonable basis, the plan administrator does not need to afford greater weight to the opinion of the employee's treating physician. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). In any event, Dr. Scargle noted that the Plaintiff was capable of performing clerical work at all times in the absence of a pseudoseizure. (Dkt. 18, AR 154). Dr. Givens also correctly observed that Dr. Wyko, a doctor of osteopathy, found that she had

no restrictions stemming from a physical basis, even though fibromyalgia was one of his diagnoses. (Dkt. 18, AR 36, 71-72, 77-103, 154).

The Plaintiff next takes the position that Sedgwick overlooked her ailments apart from her psychological condition, such as her migraines and fibromyalgia. There is no question that her initial request for LTD benefits was based on a diagnosis from Dr. Scargle dated September 10, 2008, of conversion disorder with seizures, adjustment disorder, anxiety, and depression. Dr. Scargle did not indicate there were any secondary conditions contributing to her disability or that there were any restrictions. (Dkt. 18, AR 44-45, 60). While Dr. Wyko may have mentioned fibromyalgia, he clearly stated that any restrictions would flow strictly from psychological issues, not physical conditions. (Dkt. 18, AR 71). In the appeal, the Plaintiff submitted two additional physician's reports—one from Dr. Levin, a rheumatologist, diagnosed her with fibromyalgia and another from Dr. Wyko. Although both Dr. Levin and Dr. Wyko opined that the Plaintiff was unable to work based on the primary diagnosis of fibromyalgia, neither physician justified their physical restrictions with any objective records. (Dkt. 18, AR 180; 210). Dr. Wyko changed his position from his previous records in which he never claimed she was unable to work. As articulated by Sedgwick, there is no objective evidence in the record to substantiate the change in position of Dr. Wyko. Based on the variations in the physical restrictions noted by these two physicians and the lack of objective evidence, the plan administrator cannot be said to have been unreasonable in its decision not to give greater weight to these two opinions.

The Plaintiff further challenges the opinions of Drs. Goldman and Antonelli as biased and conclusive. Dr. Goldman, a psychiatrist, clearly stated that "while a non-epileptiform seizure may sporadically occur, this would not preclude an individual such as [the Plaintiff] from performing the duties of her job." (Dkt. 18, AR 385). Dr. Antonelli, an occupational and emergency medicine physician, also found that the Plaintiff was not disabled. (Dkt. 18, AR 392). Dr. Antonelli provided an extensive review of all of the medical records of the Plaintiff. (Dkt. 18, AR 387-394). See Watts v. BellSouth Telecomms., Inc., 218 Fed.Appx. 854, 856 (11th Cir. 2007) (unpublished opinion) (citing Black & Decker for the proposition that treating physicians are afforded no greater deference than peer review reports); Richey v. Hartford Life & Accident Ins. Co., 608 F.Supp.2d 1306, 1312 (M.D. Fla. 2009) (holding that plan administrator may rely on opinion of qualified consultant "who neither treats nor examines the claimant, but instead reviews the claimant's medical records.").

A review of the documents from Dr. Scargle confirms that Plaintiff was not physically restricted or limited as to her ability to work. The conclusory finding by Dr. Cabello made before the beginning of the elimination period that the Plaintiff was "disabled," ostensibly based on headaches, cannot be said to require that a greater weight be given to his examination than those of the other consulting physicians.[4] Dr. Wyko

---

[4] See Gipson v. Administrative Comm. of Delta Air Lines, Inc., 350 Fed.Appx. 389, 395 (11th Cir. 2009 (unpublished opinion) (concluding that where one treating physician's opinion was conclusory, plan administrator acted reasonably in weighing independent consultants' opinions as well as other treating physicians' opinions more heavily).

changed his opinion that the Plaintiff was disabled only after he completed a questionnaire during the appeal of the initial denial. Drs. Goldman and Antonelli provided opinions that the Plaintiff was not disabled, both based on the Plaintiff's medical records. The plan administrator's decision to deny benefits was reasonable and not "*de novo* wrong" in view of the discrepancies in the treating physicians reports and the supported findings of the independent consultants.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendant's Motion for Summary Judgment or, in the alternative, Motion for Final Judgment (Dkt. 18) is **GRANTED**.

(2) The clerk is directed to enter final summary judgment in favor of Defendant Sedgwick Claims Management, Inc. and against Plaintiff.

(3) The clerk is directed to close the file.

**DONE AND ORDERED** at Tampa, Florida, on May 3, 2010.

    s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record